**David Blanchard LINEBARGER,
Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

No. C-83-20238-RMW.

United States District Court,
N.D. California.

May 14, 1996.

Chester G. Moore, Thomas J. LoSavio, Law, Ball & Lynch, San Francisco, CA, for Plaintiff.

Michael T. Truscott, U.S. Department of Justice, Torts Branch, Civil Division, Washington, D.C., for Defendant.

### ORDER DENYING MOTION TO ENFORCE SETTLEMENT AGREEMENT

WHYTE, District Judge.

Plaintiff's motion to enforce settlement agreement was heard on May 10, 1996. The court has read the moving and responding papers and heard the oral argument of counsel. For the reasons set forth below, the court denies plaintiff's motion to enforce the settlement agreement.

## I. BACKGROUND

On February 7, 1996, plaintiff filed his motion to enforce the terms of a settlement agreement entered into between the United States of America and him in 1984. Plaintiff filed an action against the United States in 1983 under the Federal Tort Claims Act ("FTCA") for injuries sustained in an accident involving the United States Postal Service. The parties ultimately settled the action resulting in a stipulation and order approving compromise settlement ("settlement") being entered on November 29, 1984. Declaration of David Blanchard Linebarger ("Linebarger Decl."), Ex. A.

The settlement provided that defendant United States of America shall pay in full and final settlement of this matter the following amounts:

Plaintiff, DAVID BLANCHARD LINEBARGER shall receive an initial cash payment of $110,378.00. In addition, Defendant shall purchase an annuity contract with the Executive Life Insurance Company at a cost of $52,122.00. Funds from the annuity contract will be disbursed to Plaintiff as follows:

$15,000.00 in the third year, $20,000.00 in the sixth year, $30,000.00 in the tenth year, $60,000.00 in the fifteenth year, and a final payment of $90,000.00 in the twentieth year.

Linebarger Decl., Ex. A, ¶ 1. The settlement was approved by United States District Judge Robert P. Aguilar who signed the stipulation and order on November 28, 1984. The terms of the settlement also were included in the dismissal and release ordered by the judge and filed November 29, 1984. Linebarger Decl., Ex. B.

Plaintiff received the initial payment of $110,378 and the third and sixth year payments under the annuity. Plaintiff asserts, however, that the tenth year payment was not $30,000 but only $18,756. The shortfall in the amount is due to the fact that Executive Life Insurance Company ("ELIC") went bankrupt and was put into a rehabilitation plan under which Aurora National Life Assurance Company assumed and reinsured the liability of ELIC. Under the terms of the rehabilitation plan, all ELIC annuity contracts were reevaluated by Aurora resulting in the potential shortfalls.[1] Plaintiff claims that the fifteenth and twentieth year payments will result in shortfalls as well. Thus, plaintiff claims that the United States has breached the terms of the settlement agreement because it was obligated to make sure plaintiff received the aforementioned amounts. Plaintiff therefore seeks an order compelling the United States to pay him the total of the tenth payment shortfall plus the future shortfall amounts in a lump sum payment now or an order compelling payment of the tenth year shortfall now and purchase of an annuity to make future shortfall payments on the fifteenth and twentieth payment dates.[2]

Defendant filed its opposition to plaintiff's motion on April 19, 1996. Defendant makes two primary arguments: (1) that this court does not have jurisdiction to enforce the settlement agreement and (2) that, in any event, the United States has complied with the terms of the settlement agreement.

## II. ANALYSIS

### A. *Jurisdictional Issue*

■ Defendant relies on *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994) for the proposition that this court does not have jurisdiction to enforce the terms of the settlement agreement. However, defendant's reliance is misplaced because *Kokkonen* actually supports this court's jurisdiction to enforce the terms of the settlement agreement in this case. In *Kokkonen*, the Supreme Court explicitly states:

1. In his supplemental declaration, plaintiff states that he also received $4,919.90 from Aurora representing a "Rehabilitation Plan Adjustment." He has added that to the total amount received as the tenth year payment under the annuity contract.

2. While the court finds that the government satisfied its obligations under the terms of the settlement agreement (see § III), even if this were not the case plaintiff's requested order does not accurately reflect his alleged loss. As a preliminary matter, plaintiff only suspects that the fifteenth and twentieth years will result in shortfalls but cannot be sure that will happen until those payments become due. Further, plaintiff's request that the government be required to pay the full amount of the estimated shortfalls now does not account for the time value of money.

The situation would be quite different if the parties' obligation to comply with the terms of the settlement agreement had been made part of the order of dismissal—either by separate provision ... *or by incorporating the terms of the settlement agreement in the order.* In that event, a breach of the agreement would be a violation of the order, and ancillary jurisdiction to enforce the agreement would therefore exist.

*Id.* at ——, 114 S.Ct. at 1677 (emphasis added); *see Hagestad v. Tragesser,* 49 F.3d 1430 (9th Cir.1995). Defendant contends that the terms of the settlement agreement were not incorporated into the order of dismissal, yet paragraph 1 of the order of dismissal plainly sets forth the obligations of the parties under the settlement agreement. Linebarger Decl., Ex. B.[3] Thus, the terms were incorporated as part of the dismissal order and this court therefore retains jurisdiction to enforce the terms of the settlement agreement.[4]

B. *Terms of Settlement Agreement*

■ The settlement agreement provides that "Defendant shall purchase an annuity contract with the Executive Life Insurance Company at a cost of $52,122.00." The agreement goes on to describe how the annuity funds will be disbursed once the United States has purchased the annuity. The United States' only obligation under the terms of the agreement was to purchase the annuity, which it did. Once the United States purchased the annuity, plaintiff was subject to the terms and conditions attached to the annuity by ELIC. The United States no longer had any authority regarding the annuity. Thus, because the United States fulfilled its obligations under the terms of the settlement agreement, i.e. paid the initial lump sum amount and purchased the annuity, it cannot be held liable for ELIC's failure to make the full payments.

■ The plain language of the settlement provides that the government's obligation was fully satisfied upon its purchase of the annuity, and the circumstances existing at the time of the settlement support this reading of the agreement. Plaintiff argues that the following language in the settlement agreement call for the government to guarantee the payments made by ELIC: "All of the above distributions shall be based upon the date that the premium is paid and the contract is purchased and all such distributions shall be guaranteed to the plaintiff's estate." Linebarger Decl., Ex. A, ¶ 1. Plaintiff reads the "guaranteed" language out of context. It clearly means that the annuity purchased was to provide for payments to plaintiff's estate should plaintiff die before the final payments. It is not intended to call for the government to guarantee annuity payments. Under the FTCA the United States could not have entered an agreement in which it was required to make periodic payments over twenty years. *Hull by Hull v. U.S.,* 971 F.2d 1499, 1505 (10th Cir.1992) (government must satisfy its obligation up front in one lump sum). Plaintiff essentially argues that, under the terms of the settlement agreement, the government was required to see that each payment was made and if not pay that amount itself. Such an agreement is plainly prohibited under the FTCA. *See Hull by Hull,* 971 F.2d at 1505 and cases cited therein. Thus, under the FTCA the government had to satisfy its obligation up front in one lump sum payment, which it did by paying the initial $110,378.00 and purchasing the annuity for $52,122.00.

**3.** Exhibit B of the Linebarger Declaration is the Dismissal and Release. It contains the two-page stipulation and order for dismissal as well as a third page containing the terms and payment schedule of the annuity contract. Attached as Exhibit B to the memorandum of points and authorities in opposition to plaintiff's motion is also a copy of the Dismissal and Release. However, defendant's copy does not contain the third page outlining the terms and payment schedule. It is unclear to the court whether this page was incorporated as part of the Dismissal and Release. However, because the first paragraph of the Dismissal and Release itself contains the terms of the settlement agreement, the court finds that such terms were incorporated as part of the order of dismissal.

**4.** Plaintiff argues in his reply that because the settlement itself was embodied in a stipulation and *order* approving compromise settlement that this court retains jurisdiction because all that is necessary is that the terms of the settlement be part of an order. However, the terms were also incorporated in the dismissal order, thus the court retains jurisdiction of that order under *Kokkonen.*

Therefore, defendant cannot now be liable for breach of the agreement because it satisfied its obligations in 1984 when the agreement was entered.[5]

Finally, plaintiff's argument that requiring the government to make up the shortfalls does equity cannot mandate granting the motion. The parties to a settlement agreement can negotiate the terms they want within the confines of the law. Thus, if plaintiff had wanted a different annuity company used, he simply could have made his choice of annuity company part of the agreement. Thus, while it may be in the interest of the annuity purchaser to pay as little as possible for the annuity, the party receiving the proceeds from the annuity can easily counter that interest by investigating annuity providers himself and requiring, as a term of the settlement, that a certain annuity company be used.

### III. ORDER

Based on the foregoing, the court denies plaintiff's motion to enforce the settlement agreement.

---

5. Plaintiff asserts in his reply that the FTCA does not preclude enforcement of the settlement agreement because what he seeks now is a lump sum payment. However, if the settlement agreement is characterized the way plaintiff claims it should be characterized the entire agreement would have violated the FTCA because it would have required that the government make sure the periodic payments from 1984 through 2004 were made. Such characterization is contrary to what the FTCA requires.